–IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>        *Plaintiff*<br><br>-vs-<br><br>VICTOR LEE FARIAS,<br>        *Defendant* | §§§§§§§§§§ | SA-20-CV-00885-XR |

**ORDER**

On this date, the Court considered Plaintiff Securities and Exchange Commission's motion for default judgment (ECF No. 23). After careful consideration, the Court issues the following order.

**BACKGROUND**

Plaintiff Securities and Exchange Commission (the "SEC") filed a Complaint against Defendant Victor Lee Farias ("Farias"), alleging that Farias[1] committed numerous violations of federal securities law by (1) committing fraud in the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (2) committing fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act; and (3) selling unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act. ECF No. 1 ¶¶ 46–56.

**I.   Facts**

From 2013 through January 2019, Farias and his company, Integrity Aviation & Leasing LLC ("IAL"), defrauded investors out of more than $14 million through an investment scheme

---

[1] The SEC also named Integrity Aviation & Leasing, LLC as Defendant in the action, but has since voluntarily dismissed its claims against Integrity Aviation & Leasing. ECF No. 19.

1

involving the offer and sale of purportedly secured promissory notes. ECF No. 1 ¶ 1. Defendants represented to investors that their money would be used by IAL to purchase aircraft engines and other aviation assets that would be leased or sold to major airlines and that revenues derived from this business would be used to pay investors interest on their investments at the rate of 10–12% per year. *Id.* Farias and IAL also represented that the promissory notes were secured by IAL's assets. *Id.*

In fact, Farias and IAL misrepresented many facets of the offering, misspent a significant portion of the investors' funds, and used only a small portion of the investor funds for their intended purpose. *Id.* ¶ 2. Specifically, Farias and IAL used approximately $6.5 million of the $14 million raised to pay investors Ponzi-like returns, invested approximately $2.7 million in a friend's gas station and convenience store project, and paid nearly $1 million in undisclosed and impermissible sales commissions to IAL's sales staff for their successful efforts in recruiting investors to purchase IAL's promissory notes. *Id.* Furthermore, Farias misappropriated $2.4 million of investor funds for his own personal use, including disbursements for meals, entertainment, auto expenses, retail purchases, travel, apartment rent, jewelry and other luxury retail purchase, and golf and country club expenses. *Id.*

Additionally, despite representing that the promissory notes would be secured by IAL's assets, neither Farias nor IAL took any steps to file the necessary documents to secure the investors' interests. *Id.* ¶ 3. Farias failed to inform investors that he had already pledged IAL's assets as collateral in a separate deal to benefit a separate company that Farias owned. *Id.*

Based on these allegations, the SEC filed a Complaint, seeking (1) permanent injunctive relief; (2) disgorgement of ill-gotten gains; (3) civil penalties; and (4) an order barring Farias from serving as officer or director of a public company. *Id.* ¶ 6.

## II.     Procedural History

Farias was served with a copy of the summons and Complaint on August 5, 2020. ECF No. 5. Accordingly, Farias was required to file a responsive pleading on August 26, 2020. FED. R. CIV. P. 12(a). After several agreements with the SEC to extend his deadline to file a responsive pleading, Farias was required to answer or otherwise respond on or before October 14, 2020. ECF No. 8. Farias eventually moved for an extension of time to respond in light of ongoing settlement negotiations between himself and the SEC. *See* ECF Nos. 11, 12.

Before Farias filed a responsive pleading, the Court stayed this action because the Government initiated a parallel criminal proceeding against Farias. ECF No. 14. On January 27, 2021, Farias entered a guilty plea in the criminal action. ECF No. 16. Because any restitution in the criminal case would likewise impact the amount of damages sought in this civil action and any settlement negotiations, the Court issued an order on April 22, 2021 further abating this case pending the full resolution of the related criminal case against Mr. Farias, including sentencing. ECF No. 15. On September 29, 2021, Defendant was sentenced to 135 months imprisonment, to be followed by a term of supervised release for three years, and ordered to pay $7,424,927.10 in restitution. *United States v. Victor Farias*, 5:20-CR-00540-XR, ECF Nos. 40, 42.

On December 14, 2021, the Court re-opened this civil action and ordered the parties to confer and submit an advisory concerning the status of this case. ECF No. 16. The SEC advised the Court that it tried to contact Farias, but that Farias has failed to respond. The SEC further advised that despite numerous attempts to discuss settlement options since the initiation of this civil action, Farias had not responded. *Id.* Accordingly, the Court ordered the SEC to move for default judgment. ECF No. 17. The Clerk entered default against Farias, and the SEC subsequently moved for default judgment. ECF No. 21; ECF No. 23.

## DISCUSSION

I.  **Legal Standard**

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

II.  **Analysis**

   A.  **Jurisdiction**

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Further, 15 U.S.C. § 77t states that the SEC may "bring an action in any district court of the United States" to prosecute violations of federal securities laws. Here, the SEC alleges that Farias committed several violations of federal securities law. *See generally* ECF No. 1. Therefore, this Court possesses subject matter jurisdiction to hear this case.

Additionally, this Court has personal jurisdiction over Farias. Rule 4 provides that service of summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. FED. R. CIV. P.

4(k)(1)(A). Farias was served personally at his residence in Fair Oaks Ranch, Texas in compliance with Rule 4. ECF No. 5. Accordingly, the Court has personal jurisdiction over Farias.

### B. Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A WRIGHT & MILLER *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

### 1. Farias violated Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

Section 17(a) of the Securities Act makes it unlawful in the offer or sale of securities in interstate commerce to (1) employ any device, scheme, or artifice to defraud; (2) obtain money or property by means of any material misstatements or omissions; or (3) engage in any transaction, practice, or course of business which would operate as fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act empowers the SEC to promulgate rules to prevent deceptive practices in the sale of securities. 15 U.S.C. § 78j(b). Under this grant of authority, the SEC issued Rule 10b-5, which makes it unlawful to (1) employ any device, scheme, or artifice to defraud; (2) make any untrue statement of material fact or to omit to state a material fact in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person. 17 C.F.R. § 240.10b-5. Because "the proscriptions of section 17(a) are substantially the same as those of section 10(b) and rule 10b-5," the Court will analyze together whether relief is proper under both statutes. *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 903 (5th Cir. 1980); *see also SEC v. Helms*, No. A-13-01036-ML, 2015 WL 5010298, at *12 (W.D. Tex. Aug. 21, 2015).

Additionally, to establish violations of Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 requires a showing of scienter, whereas violations of Section 17(a)(2) and Section 17(a)(3) require a showing of at least negligence. *Aaron v. SEC*, 446 U.S. 680, 701–02 (1980). The required state of mind for scienter is "intent to deceive, manipulate, or defraud or severe recklessness." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (quoting *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008)).

The Complaint sufficiently details how Farias violated Section 17(a)(2) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 by obtaining money by means of material misrepresentations and omitting material facts. Farias first began operating IAL in August 2013 to—purportedly—participate in the aircraft engine leasing market. ECF No. 1 ¶ 12. To fund IAL, Farias and IAL offered and sold to investors IAL securities in the form of promissory notes. *Id.* In 2015, Farias and IAL began disseminating Private Placement Memorandum ("PPM") to current and prospective investors. *Id.* ¶ 14. The PPM provided that the promissory notes would (1) have a 30-month term; (2) be secured by IAL's assets; and (3) pay interest on a quarterly basis at a 12% annual rate of return. *Id.* ¶ 15. Farias signed the promissory notes and security agreements on behalf of IAL. *Id.*

The PPM described IAL's purposes and objectives, all of which related to acquiring, selling, and leasing airplane engines and other aviation parts. *Id.* ¶ 16. Additionally, the PPM detailed IAL's authorized uses of investor funds, which primarily included day-to-day operating expenses such as accounting and tax services, organizational expenses, salaries of officers, etc. *Id.* Notably, the PPM expressly provided that Farias would not receive compensation from the company for his services in managing IAL's business. *Id.* ¶ 17. The PPM also provided that investor funds may be used to pay certain sales commissions, but only in connection with brokering the purchase or sale of aviation assets or "sourcing deals on behalf of the company." *Id.* ¶ 18.

In addition to the PPM, Farias and IAL's salespeople provided prospective investors with brochures detailing the profitability of the aviation asset leasing industry. *Id.* ¶ 19. The brochure incorporated photos of airplanes and represented that IAL was "expected to generate gross

revenue in excess of $15 million per year with asset value in excess of $35 million." *Id.* ¶¶ 19–20.

Finally, Farias and IAL's salespeople directed prospective investors to IAL's website for more information on the company and investment opportunity. *Id.* ¶ 22. The website included a "products" page that described three different aircraft engines. *Id.* ¶ 23. It further claimed that IAL had a lease portfolio that included domestic and international carriers. *Id.*

Through the dissemination of the PPM, brochure, and website, as well as IAL salespersons, Farias was able to raise approximately $14,053,419.00 from investors. ECF No. 23-1 at 5; ECF No. 1 ¶ 35. However, almost all of the representations made in IAL's marketing were false. IAL failed to purchase a single airplane engine after 2015, and only a fraction of investor funds was used to purchase airplane parts. ECF No. 1 ¶ 27. IAL generated negligible net revenues from leases of aircraft engines. *Id.* Further, neither Farias nor any party associated with IAL took steps to perfect the investors' security interests in the promissory notes. *Id.* ¶ 32. Unbeknownst to investors, Farias conveyed a security interest in IAL's assets to IA Finance—a separate company owned, controlled, and managed by Farias—for the benefit of investors in IA Finance. *Id.* ¶ 33.

Instead of using investor funds to run the business described in IAL's PPM, brochure, and website, Farias used investor funds for unauthorized purposes. *Id.* ¶ 28. Beginning in 2013, Farias began making Ponzi-like "interest" payments back to investors. *Id.* These payments totaled $6.5 million. *Id.* Additionally, Farias used $2.7 million of investor funds to invest in a friend's convenience store. *Id.* ¶ 29. Farias also transferred $1.6 million from IAL's bank account to his own personal account, and used $800,000 to pay for meals, entertainment, auto expenses, retail purchases, and country club expenses. *Id.* ¶ 30. Finally, Farias and IAL paid almost $1

million in undisclosed commissions to IAL's salespeople for successfully recruiting investors to purchase IAL promissory notes. *Id.* ¶ 31.

Farias's false statements and omissions were material. "[A] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (quoting *R&W Tech. Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000)). There is no doubt that Farias's representations and omissions were material, as a reasonable investor would consider whether a business was legitimate and whether their funds would be used appropriately in deciding to invest. *E.g.*, *SEC v. Greenview Inv. Partners*, No. 3:18-CV-2349-G, 2020 WL 973750, at *2 (N.D. Tex. Jan. 2, 2020) (finding that misrepresentations about the nature of a business and misappropriation of investor funds are material).

Farias additionally violated Sections 17(a)(1) and 17(a)(3) of the Securities Act and Rule 10b-5. In addition to the numerous misrepresentations Farias made to investors, Farias engaged in a scheme to defraud and deceptive acts, practices, or courses of business by (1) misappropriating investor funds for his own personal use when he stated he would not receive a salary; (2) paying "interest" to investors, thereby deceiving them into believing that IAL was generating revenue; and (3) paying undisclosed sales commissions to incentivize his salespeople to sell more promissory notes. *See*, *e.g.*, *SEC v. Milles*, No. 1:19-CV-714-RP, 2022 WL 206808, at *4 (W.D. Tex. Jan. 24, 2022) (misappropriation of investors' funds can be indicative of a scheme to defraud); *Helms*, 2015 WL 5010298, at *13 (finding that Ponzi payments are evidence of deceptive practices). Additionally, when investor funds began to dry up due to the declining number of new investors, Farias held a meeting to answer investors' questions. ECF No. 1 ¶ 44.

At the meeting, he claimed that IAL's funds had been "frozen" due to a lawsuit, and that he was taking the company public and was waiting for the SEC to approve the initial public offering. *Id.* ¶¶ 44–45. To convince investors, he created a fake document with the SEC's letterhead from an investigative subpoena he received. *Id.* ¶ 45. Indeed, attempts to avoid detection of "are characteristic of a scheme to defraud." *Milles*, 2022 WL 206808, at *4.

Farias also acted with scienter. Alleged facts are sufficient to support an inference of fraudulent intent if they either "(1) show a defendant's motive to commit securities fraud, or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018–19 (5th Cir. 1996). The SEC has established both. First, Farias had a plain motive to commit securities fraud when misappropriating funds for his own benefit. Second, Farias was responsible for the content of the PPM, brochure, and website, so he was aware of the information being delivered to investors and prospective investors. He also controlled IAL's bank accounts and how investors' funds were spent. Thus, he was aware that he was using investor funds for unauthorized purposes.[2]

Because the SEC has alleged sufficient facts establishing Farias's liability—that Farias by his default has admitted are true—the Court concludes that Farias is liable for violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

### 2. Farias violated Sections 5(a) and 5(c) of the Securities Act.

The SEC has pled sufficient facts to establish that Farias offered and sold unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act. To establish a prima facie case for violations of Sections 5(a) and 5(c), the SEC must show that "(1) [Farias], directly or indirectly, offered or sold securities; (2) no registration was in effect or filed with the

---

[2] Because the SEC has shown that Farias acted with scienter, it has also met the lesser burden of showing Farias was negligent under Sections 17(a)(2) and (a)(3). *SEC v. Stack*, No. 1:21-CV-00051-LY, 2021 WL 4777588, at *7 (W.D. Tex. Oct. 13, 2021).

Commission for the offer or sale of those securities; and (3) interstate transportation, communication, or the mails were used in connection with the offer and sale." *Milles*, 2022 WL 206808, at *5; *Swenson v. Engelstad*, 626 F.2d 421, 424–25 (5th Cir. 1980). The Securities Act "imposes strict liability on offerors and sellers of unregistered securities. . . . regardless of . . . any degree of fault, negligent or intentional, on the seller's part." *Swenson*, 626 F.2d at 424–25. Once a prima facie case is shown, the burden shifts to the defendant to show that the sales fell under an exception to the registration requirements. *U.S. Sec. & Exch. Comm'n v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017).

The SEC has pled facts establishing all three elements. First, Farias offered and sold promissory notes, which are "securities" under the Securities Act. *See* 15 U.S.C. § 77b(a)(1) ("any note" and "investment contract" included in definition of "security"). Second, no registration statement for the promissory note offering was in effect. ECF No. 1 ¶ 13. Third, Farias used interstate commerce in connection with the offer and sale of the securities. Farias and IAL, based in Boerne, Texas, marketed the offering and solicited investors in at least five states through phone calls, emails, and IAL's website. *Id.* ¶¶ 11, 22–26, 35, 37. Further, there is no contention that the promissory notes fell under an exception to the registration requirements. Accordingly, the Complaint alleges sufficient facts to establish Farias's liability for violating Sections 5(a) and 5(c) of the Securities Act.

### C. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P.

54(c).  Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without an evidentiary hearing). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

The Court does not find that a hearing is necessary in this case. Here, the SEC seeks (1) permanent injunctive relief; (2) an order barring Farias from serving as officer or director of a public company; and (3) disgorgement of ill-gotten gains.[3] ECF No. 1 ¶ 6. In its motion for default judgment, the SEC has provided the Court with an adequately detailed affidavit demonstrating the mathematical calculation of monetary damages in this case. *See* ECF No. 23-1. As for the equitable relief requested, the briefing provided the by SEC is sufficient for the Court to assess whether it is entitled to an injunction.

### 1. The SEC is entitled to a permanent injunction against Farias to prevent him from committing future violations of securities law.

"Section 20(b) of the Securities Act of 1933, 15 U.S.C. [§] 77t(b), and section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. [§] 78u(d), authorize the Commission to seek and direct the courts to enter permanent restraining orders upon a 'proper showing' that the defendant 'is engaged or is about to engage' in violations of the securities laws." *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981). "[T]he Commission is entitled to prevail when the

---

[3]  While the Complaint further asserts that the SEC seeks civil penalties against Farias, its motion for default judgment fails to brief the issue. As such, the Court will not award civil penalties.

inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions." *Id.* (quoting *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980)). "In imposing a permanent injunction, the district court must consider a number of factors, including the (1) egregiousness of the defendant's conduct, (2) isolated or recurrent nature of the violation, (3) degree of *scienter*, (4) sincerity of defendant's recognition of his transgression, and (5) likelihood of the defendant's job providing opportunities for future violations." *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009).

The SEC's allegations and totality of the circumstances weigh in favor of granting an injunction. Considering the vast amount of capital invested in IAL, 88 deceived investors, and repeated affirmative misrepresentations, Farias's conduct was egregious. *See Helms*, 2015 WL 5010298, at *18 (finding egregious conduct where defendants made repeated misrepresentations and duped numerous investors). Further, Farias's conduct was not isolated as it took place over a seven-year period. Finally, Farias acted with a high degree of scienter, as he was responsible for the creation of the PPMs, website, and brochure, and had ultimate control over IAL's bank accounts. While Farias pled guilty in the parallel criminal case, that does not outweigh the three other factors in favor of an injunction. Further, Farias will be in his late 50s upon completion of his sentence, meaning he would still have the opportunity to engage in new investment ventures at that time, and he has offered no assurances against future violations. *Farias*, 5:20-CR-00540-XR, ECF No. 42 at 2. Therefore, a permanent injunction is warranted.

### 2. The SEC is entitled to an injunction barring Farias from serving as an officer or director of an issuer.

The SEC additionally seeks to have Farias barred from acting as a director or officer of any issuer because he is unfit to serve in those capacities under 15 U.S.C. §§ 77t(e) and 78u(d)(2). "When determining 'unfitness' bars, courts consider: (1) the egregiousness of the

13

underlying violation; (2) the defendant's prior offenses; (3) the defendant's role when he engaged in the violations; (4) the degree of *scienter*; (5) the defendant's economic stake in the violation; and (6) the likelihood that the misconduct will occur again." *SEC v. Provident Royalties, LLC*, No. 3:09-CV-01238-L, 2013 WL 5314354, at *7 (N.D. Tex. Sept. 23, 2013) (citing *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995); *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979)).

As discussed, Farias's conduct was egregious, and he acted with a high degree of scienter. Further, Farias had the central role in the fraud scheme, as he was IAL's sole managing member and had control over the investor funds. Farias also had a significant economic stake in the scheme, as he spent millions of dollars of investor funds on retail purchases, dining, and other personal expenses. Finally, there is a possibility that future violations could occur, as Farias will be of working age when his sentence is complete. Consequently, barring Farias from serving as an officer or director of an issuer is warranted.

### 3. Disgorgement and prejudgment interest is also warranted.

Lastly, the SEC seeks disgorgement of Farias's profits flowing from his violations of federal securities law. A court may order such a remedy to prevent the offender from enriching himself by his wrongdoing. *See Liu v. SEC*, 140 S. Ct. 1936, 1942–44 (2020) (reaffirming the SEC's authority to seek disgorgement as an equitable remedy under 15 U.S.C. § 78u(d)(5)). However, disgorgement is limited to the wrongdoer's net profits and must be returned to the aggrieved investors for their benefit. *Id.* at 1940. "The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, and then the burden shifts to the defendant to show that this figure is not a

reasonable approximation." *SEC v. ConnectAJet.com. Inc.*, No. 3:09-CV-1742-B, 2011 WL 5509896, at *7 (N.D. Tex. Nov. 9, 2011).

An appropriate amount of disgorgement against Farias can be determined from the evidence the SEC submits in connection with its motion for default judgment. Certified Public Accountant Ty Martinez has reviewed bank records from the four accounts associated with Farias and IAL, and based on his review, has determined that Farias's net profits from his wrongdoing totals $4,904,930.13. ECF No. 23-1 at 7. Martinez calculated this amount by first totaling the amount raised from investors, which was $14,053,419.43, and then deducting the $6,504,159.30 Farias distributed back to investors as false returns and the $2,644,330.00 in estimated legitimate business expenses such as the cost of the aircraft parts IAL actually purchased. *Id.* Farias has not offered any evidence to rebut Martinez's calculation. As such, the Court accepts Martinez's calculation as a reasonable approximation of Farias's ill-gotten gains.

"Finally, an award of prejudgment interest prevents wrongdoers from benefitting from what is, in effect, an interest-free loan resulting from their illegal activity." *Milles*, 2022 WL 206808, at *7. Whether to award prejudgment interest is in the district court's discretion. *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 747 (5th Cir. 2004) (per curiam). Where, as here, the wrongdoer had access to funds over a prolonged period, ordering prejudgment interest is consistent with the equitable nature of the disgorgement remedy. *See SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1089–90 (D.N.J. 1996). Based on a principal disgorgement amount of $4,904,930.13, application of the tax underpayment rate from September 19, 2019, the approximate last date of investor funding, through March 31, 2022, results in a prejudgment interest amount of $459,329.76. ECF No. 23-1 at 7–8.

Though the Court has determined that an award of $5,364,259.89 in disgorgement and prejudgment interest is appropriate, the amount is satisfied by the $7,424,927.10 in restitution that Farias was ordered to pay as part of his criminal judgment. *Farias*, 5:20-CR-00540-XR, ECF No. 42 at 6. The conduct at issue in this civil enforcement action is identical to the conduct giving rise to Farias's criminal conviction. *Compare* ECF No. 1 (Complaint) *with Farias*, 5:20-CR-00540-XR, ECF No. 6 (Indictment). As such, it is appropriate in this case to deem Farias's disgorgement and prejudgment interest satisfied by the restitution ordered in his criminal case.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment (ECF No. 23) is **GRANTED**. A final judgment reflecting the Court's order will be filed separately.

The Clerk is **DIRECTED** to mail a copy of this order to Victor Farias at FCI Oakdale II, 2105 East Whatley Road, Oakdale, LA 71463.

It is so **ORDERED**.

**SIGNED** this 1st day of August, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE